## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **Susan Beams Hunnicutt,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:13-CV-01719-MHH** |
| | } | |
| **CAROLYN W. COLVIN, Acting** | } | |
| **Commissioner, Social Security** | } | |
| **Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Susan Beams Hunnicutt filed this action on September 17, 2013, pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act. Ms. Hunnicutt seeks judicial review of a final adverse decision of the Commissioner of the Social Security Administration.[1] The Commissioner affirmed the Administrative Law Judge's denial of Ms. Hunnicutt's claims for a period of disability and supplemental security income. *See* 42 U.S.C. § 1383(c). After careful review, the Court affirms the Commissioner's decision.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as the defendant in this suit. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer affecting the parties' substantial rights must be disregarded.").

## I.   <u>STANDARD OF REVIEW</u>

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Soc. Sec. Admin. Comm'r*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the findings of the Commissioner.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it."  *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013) (quoting *Dyer v. Barnhart*, 395 F.2d 1206, 1210 (11th Cir. 2005)).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis,

then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Ms. Hunnicutt alleges that her disability began on February 27, 2010. (Doc. 8-6, p. 2). She applied for social security income benefits under Title XVI on Mach 1, 2010. (Doc. 8-4, p. 2). The Social Security Administration denied Ms. Hunnicutt's application on August 9, 2010. (Doc. 8-5, pp. 5–9). At Ms. Hunnicutt's request, an Administrative Law Judge (ALJ) held a video hearing on February 23, 2012. (Doc. 8-5, pp. 12–14; Doc. 8-3, pp. 36–63). At the time of the hearing, Ms. Hunnicutt was 48 years old. (Doc. 12, p. 2). Ms. Hunnicutt has a GED. (Doc. 8-3, p. 43). Her past relevant work experience is as a cashier and a cook. (Doc. 8-3, p. 44; Doc. 8-7, pp. 29–36).

On April 26, 2012, the ALJ denied Ms. Hunnicutt's request for disability benefits, concluding that Ms. Hunnicutt is not disabled under section 1614(a)(3)(A) of the Social Security Act. (Doc. 8-3, pp. 18–32). In his 12-page decision, the ALJ described the Social Security Administration's "five-step sequential evaluation process for determining whether an individual is disabled." (Doc. 8-3, pp. 20–23). The ALJ explained that "[i]f it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step." (Doc. 8-3, p. 20).

The ALJ found that Ms. Hunnicutt "has not engaged in substantial gainful activity since March 1, 2010, the application date." (Doc. 8-3, p. 23). In addition, the ALJ concluded that Ms. Hunnicutt has "the following severe impairments: left carotid occlusion, migraines, status post cardiovascular accident, hypertension, and obesity." (Doc. 8-3, p. 23). The ALJ did not find Ms. Hunnicutt's mental impairments of adjustment disorder with mildly depressed mood and anxiety to be severe impairments. (Doc. 8-3, p. 23). Using the four broad functional areas set out in the disability regulations, the ALJ found that Ms. Hunnicutt: (1) has mild limitation in activities of daily living; (2) has no limitation in social functioning; (3) has mild limitation in concentration, persistence, or pace; and (4) has experienced no episodes of decompensation which have been of extended duration. (Doc. 8-3, pp. 23–24). The ALJ concluded that Ms. Hunnicutt's severe impairments, when considered individually and in combination, do not meet or equal the criteria of a listed impairment. (Doc. 8-3, p. 24).

Next, the ALJ calculated Ms. Hunnicutt's residual functional capacity (RFC). The ALJ determined that Ms. Hunnicutt has the RFC "to perform light work as defined in 20 C.F.R. § 416.967(b) except that she is limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling." (Doc. 8-3, p. 24). The ALJ also stated that Ms. Hunnicutt "must avoid concentrated exposure to

extreme heat, cold or noise" and "is precluded from exposure to unprotected heights, hazardous machinery, and open water." (Doc. 8-3, p. 24).

In making his findings, the ALJ examined the record, which revealed that on February 26, 2010, Ms. Hunnicutt went to Northport Medical Center with complaints of a headache, left facial drooping, and difficulty talking. (Doc. 8-8, p. 120). She rated her pain at a 10 out of 10, noted that her pain had been present for a week, and stated that she had treated her pain with 9 Goody's powders. (Doc. 8-8, p. 120). Upon examination, Ms. Hunnicutt was diagnosed with sinusitis, dysarthia, and confusion. (Doc. 8-8, p. 125).

Ms. Hunnicutt returned to the Northport Medical Center on February 27, 2010, with worsening symptoms. (Doc. 8-8, p. 4). Ms. Hunnicutt was diagnosed with an acute stroke and treated with Coumadin. (Doc. 8-8, p. 4). Northport Medical Center discharged Ms. Hunnicutt on March 4, 2010. At that time, Dr. Charles Abney reported that Ms. Hunnicutt's face was symmetric and her speech was not slurred. (Doc. 8-8, p. 5). Dr. Abney informed Ms. Hunnicutt that she could resume her usual activities as tolerated. (Doc. 8-8, p. 5). The ALJ gave great weight to the findings of Dr. Abney because he was a treating physician and because his conclusions were consistent with the weight of the medical evidence. (Doc. 8-3, p. 29).

The ALJ considered the treatment notes of Dr. Jim Allen, who saw Ms. Hunnicutt twice in March 2010. (Doc. 8-3, p. 26). On March 12, 2010, Dr. Allen found it difficult to see any post-stroke drooping. (Doc. 8-8, p. 47–48). On March 19, 2010, Dr. Allen noted that Ms. Hunnicutt complained of comprehension problems with written material, but she was able to read her prescription labels and her physical examination was normal. (Doc. 8-8, pp. 44–45). The ALJ gave great weight to the findings of Dr. Allen because he was a treating physician and because his findings were consistent with the weight of the medical evidence. (Doc. 8-3, p. 29).

The ALJ also considered the notes of Dr. Long, who began treating Ms. Hunnicutt in April 2010. (Doc. 8-3, p. 26). On April 27, 2010, Dr. Long noted that Ms. Hunnicutt was pale and agitated, but she had no neurological or motor defects. (Doc. 8-8, p. 36). Dr. Long opined that Ms. Hunnicutt had made a remarkable recovery. (Doc. 8-8, p. 36). On May 25, 2010, Dr. Long noted Ms. Hunnicutt's complaints of headaches and muscle pain. (Doc. 8-8, p. 35). On June 22, 2010, Ms. Hunnicutt complained of headaches, forgetfulness, and intermittent anger, but Dr. Long noted no neurological or motor deficits. (Doc. 8-8, p. 34).

The ALJ then examined the treatment notes of Dr. Larry O. Skelton, who saw Ms. Hunnicutt on June 28, 2010. (Doc. 8-3, pp. 27–28). His examination did not reveal any physical abnormalities, and he determined that she had a full range

of motion.   (Doc. 8-8, p. 51).   Dr. Skelton noted that Ms. Hunnicutt seemed anxious and depressed, but her mood and affect were appropriate and her decision-making was normal.   (Doc. 8-8, pp. 50, 52).   He reported that Ms. Hunnicutt had essentially no residual effects from her cardiovascular accident (CVA).   (Doc. 8-8, p. 52).   The ALJ gave great weight to this opinion because he found it consistent with the objective medical findings of Ms. Hunnicutt's treating physicians.   (Doc. 8-3, p. 30).

The ALJ looked to treatment notes from Dr. H. Jerry Gragg, a consultative psychological examiner who evaluated Ms. Hunnicutt on July 31, 2010.   (Doc. 8-3, p. 27).   Dr. Gragg's notes reflect that there was no indication of cognitive loss secondary to the stroke.   (Doc. 8-8, p. 58).   Dr. Gragg opined that Ms. Hunnicutt would be able to respond appropriately to social situations and supervision.   (Doc. 8-8, p. 58).   He also stated that Ms. Hunnicutt "has adequate intellectual functioning to be able understand [sic], remember, and carry out instructions and should be able to perform the types of tasks she has performed in the past."   (Doc. 8-8, p. 58).   The ALJ gave great weight to this opinion because it was consistent with the objective medical evidence in the record.   (Doc. 8-3, p. 30).

The ALJ also considered the notes of Dr. Robert Estock, a non-examining state agency psychiatric consultant, who opined on August 6, 2010 that Ms. Hunnicutt's psychiatric impairments were not severe.   (Doc. 8-8, p. 59).   The ALJ

examined findings from non-examining state medical agency consultant Dr. Robert H. Heilpern.  (Doc. 8-3, pp. 27–28).  Dr. Heilpern's notes reflect that Ms. Hunnicutt's June 2010 exam showed no residual side effects from her CVA and report that she generally was independent in her activates of daily living.  (Doc. 8-8, p. 78).  Dr. Heilpern also opined that in an 8-hour workday, Ms. Hunnicutt could stand and/or walk with normal breaks for 6 hours and sit with normal breaks for 6 hours.  (Doc. 8-8, p. 74).  The ALJ assigned the opinions of Dr. Estock and Dr. Heilpern great weight because their findings were consistent with the medical evidence of record. (Doc. 8-3, p. 30).

The ALJ noted that Ms. Hunnicutt returned to the ER on August 12, 2010 with complaints of low back pain.  (Doc. 8-8, p. 110).  Doctor Jimmy Tu diagnosed chronic low back pain with lumbar radiculopathy, prescribed Lortab, and instructed Ms. Hunnicutt to follow up with her primary care physician.  (Doc. 8-8, p. 119).  Ms. Hunnicutt saw Dr. Long again on September 7, 2010, at which time Ms. Hunnicutt requested back x-rays.  (Doc. 8-8, p. 101).  Dr. Long did not find abnormalities of Ms. Hunnicutt's joints or back.  (Doc. 8-8, p. 101).  When Ms. Hunnicutt returned to Dr. Long on October 5, 2010, he did not note complaints of back pain.  (Doc. 8-8, p. 100).

The ALJ also considered the treatment notes of Dr. Damon E. Patterson, a neurologist who examined Ms. Hunnicutt on November 1, 2010.  (Doc. 8-3, p. 28).

Dr. Patterson found that all of the symptoms from Ms. Hunnicutt's ischemic stroke had resolved, and she had made a good neurological recovery but had some severe stenosis of the left ICA and incidental findings of a suspected 2cm aneurysm. (Doc. 8-8, p. 84). On November 12, 2010, Ms. Hunnicutt underwent a cerebral angiogram which Dr. Patterson reported to be normal, with no evidence of occlusion or stenosis. (Doc. 8-8, p. 87). The ALJ gave controlling weight to the findings of Dr. Patterson because he was Ms. Hunnicutt's treating neurologist. (Doc. 8-3, p. 29).

Finally, the ALJ considered Ms. Hunnicutt's continuing treatment at Whatley Health Services. (Doc. 8-3, p. 28). On April 1, 2011, Dr. Long noted Ms. Hunnicutt's headaches were better and that she had no physical abnormalities. (Doc. 8-8, p. 96). On August 23, 2011, Dr. Long noted no physical or neurological abnormalities and instructed Ms. Hunnicutt to take over-the-counter medication for recurrent headaches. (Doc. 8-8, p. 93). On November 15, 2011, Dr. Long performed a routine checkup of Ms. Hunnicutt. He found that post CVA, Ms. Hunnicutt made a complete recovery, and she had a questionable right cerebral aneurysm, chronic headache, chronic back pain, and obesity. (Doc. 8-8, p. 141). Also on November 15, 2011, Dr. Long completed a questionnaire in which he stated that he saw Ms. Hunnicutt for treatment every three months, that pain was a symptom of Ms. Hunnicutt's impairments, and that her medications could

reasonably be expected to produce drowsiness. (Doc. 8-8, p. 135). Dr. Long stated that in an eight-hour workday, Ms. Hunnicutt could sit about two hours and stand and walk about four hours. (Doc. 8-8, p. 135). He also stated that Ms. Hunnicutt would rarely need to take unscheduled breaks, but that her impairments would produce good days and bad days, and that Ms. Hunnicutt would likely be absent from work three days per month because of her impairments or treatment. (Doc. 8-8, pp. 135–136).

The ALJ gave great weight to the findings of Dr. Long because he was a treating physician and because his findings were generally consistent with the weight of the medical evidence of record. (Doc. 8-3, p. 29). However, after careful consideration, the ALJ determined that Dr. Long's assessed limitations in his November 15, 2011 source report were inconsistent with his own treatment records. (Doc. 8-3, p. 30). The November 15, 2011 source report states that Ms. Hunnicutt would be expected to miss 3 days per month due to her conditions or treatment. (Doc. 8-8, p. 136). Dr. Long's treatment records show that Ms. Hunnicutt only received treatment once a month or less. (Doc. 8-8, pp. 93–102). The ALJ also concluded that Dr. Long's assessment seemed largely based on Ms. Hunnicutt's subjective complaints of pain, which were not supported by objective medical evidence of abnormality. (Doc. 8-3, p. 30). Thus, the ALJ gave little

weight to the functional limitations assessed by Dr. Long on November 15, 2011. (Doc. 8-3, p. 30).

After examining the entirety of the medical evidence, the ALJ concluded that although Ms. Hunnicutt's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, Ms. Hunnicutt's statements concerning intensity, persistence and limiting effects of these symptoms were not consistent with the ALJ's RFC assessment. (Doc. 8-3, p. 29). The ALJ noted that the headache pain Ms. Hunnicutt alleged was not fully consistent with the medical evidence, pointing out that on August 23, 2011, Dr. Long prescribed over-the-counter medication for headache pain. (Doc. 8-8, p. 93). Regarding back pain, the ALJ stated that the record revealed only isolated complaints with no objective evidence to support the severity of the pain alleged. (Doc. 8-3, p. 29). Ms. Hunnicutt's subjective testimony regarding problems with balance, concentration, and comprehension were undermined by Dr. Patterson's conclusion that Ms. Hunnicutt had made a good neurological recovery. (Doc. 8-3, p. 29). The ALJ also determined that Ms. Hunnicutt's obesity was consistent with the exertional requirements of the ALJ's RFC assessment. (Doc. 8-3, p. 29).

The ALJ found, consistent with the vocational expert's testimony, that Ms. Hunnicutt was able to perform her past relevant work as a cashier. (Doc. 8-3, p. 30). The ALJ also made the alternative finding that there are other jobs that exist

in significant numbers in the national economy that Ms. Hunnicutt can perform. (Doc. 8-3, p. 30).  In support, the ALJ noted that Ms. Hunnicutt was defined as a "younger individual" on the date she filed her application; that Ms. Hunnicutt has a high school education and can communicate in English; and that transferability of job skills is not an issue because Ms. Hunnicutt's past relevant work is unskilled. (Doc. 8-3, p. 30).  The ALJ also relied on the testimony of the vocational expert, William Green.  (Doc. 8-3, p. 31).  Mr. Green testified that given Ms. Hunnicutt's age, education, work experience, and RFC, Ms. Hunnicutt could perform the requirements of the following jobs:

> fast food worker, with 14,000 such jobs in Alabama and 1 million nationally; sales attendant, with 2,500 such jobs in Alabama and 90,000 nationally; and cleaner, with 1,600 such jobs in Alabama and 130,000 nationally.

(Doc. 8-3, p. 31).  Having determined that Ms. Hunnicutt was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, the ALJ found that Ms. Hunnicutt is not disabled.  (Doc. 8-3, p. 31).

This became the final decision of the Commissioner of the Social Security Administration on August 30, 2013, when the Appeals Council refused to review the ALJ's decision.  (Doc. 8-3, pp. 2–5).  Having exhausted all administrative remedies, Ms. Hunnicutt filed this action for judicial review pursuant to § 405(g) of the Social Security Act, 42 U.S.C. § 405(g).  (Doc. 1, p. 1).

III.   **ANALYSIS**:

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).  "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A claimant must prove that he is disabled.  *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003)).   To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted).   "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Ms. Hunnicut asserts that she is entitled to relief from the ALJ's decision because: (1) the ALJ erred in failing to follow the opinion of treating physician Dr. Long; (2) the ALJ erred in failing to properly consider Ms. Hunnicutt's subjective complaints of pain; and (3) the ALJ erred in failing to consider the side effects of Ms. Hunnicutt's medication.   (Doc. 10, pp. 7, 10, 13).   These contentions are without merit.

## A.   Substantial Evidence Supports the ALJ's Rejection of the Treating Physician's RFC Assessment.

Ms. Hunnicutt contends that the ALJ did not give proper weight to her treating physician's RFC assessment and that the ALJ's reasons for rejecting Dr. Long's RFC assessment are not supported by substantial evidence.  (Doc. 10, p. 7). The Court disagrees.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F. 3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  "[G]ood cause exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id*. at 1240–41; *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).  "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's

opinion, and the failure to do so constitutes error.  Moreover, the ALJ must state

with particularity the weight given to different medical opinions and the reasons

therefor." *Gaskin*, 422 Fed. Appx. at 931 (internal citation and quotation omitted).

In this case, the ALJ articulated specific reasons for his rejection of treating

physician Dr. Long's RFC assessment.  The ALJ stated:

> Dr. Long's assessed limitations are inconsistent with his own
> treatment records, which reveal the claimant generally only received
> medical treatment once a month or less, and do not document
> complaints of or treatment for pain of the severity alleged.  Further,
> Dr. Long's assessed limitations appear to be based solely upon the
> claimant's subjective complaints of pain, as they are not supported by
> any objective medical evidence of abnormality.

(Doc. 8-3, p. 30).  A comparison of Dr. Long's RFC assessment and Dr. Long's

treatment records lends support to the ALJ's analysis.  In the RFC assessment, Dr.

Long diagnosed Ms. Hunnicutt with CVA, cerebral aneurysm, and back pain, and

stated that pain was a symptom of Ms. Hunnicutt's impairments.  (Doc. 8-8, p.

135).  When asked if Ms. Hunnicutt's rating of her daily pain at 7/10 to 8/10 was

reasonably consistent with her impairments and medication, Dr. Long answered

that it was difficult to say.  (Doc. 8-8, p. 135).  Dr. Long opined that Ms. Hunnicutt

could sit for about 2 hours and stand or walk for about 4 hours in an 8-hour

workday.  (Doc. 8-8, p. 135).  Dr. Long also opined that Ms. Hunnicutt would need

to take unscheduled breaks during an 8-hour day, that her impairments were likely

to produce good days and bad days, and that she was likely to be absent from work

3 days per month as a result of the impairments or treatment.  (Doc. 8-8, pp. 135–36).

In contrast, Dr. Long's examinations of Ms. Hunnicutt rarely revealed neurological or motor deficits.  (Doc. 8-8, pp. 34, 36, 94–98, 101).  On April 27, 2010, Dr. Long noted that Ms. Hunnicutt had made a remarkable recovery from her stroke.  (Doc. 8-8, p. 36).  On April 1, 2011, Dr. Long found no abnormalities of Ms. Hunnicutt's back and noted improvement regarding Ms. Hunnicutt's headaches.  (Doc. 8-8, p. 96).  Dr. Long treated Ms. Hunnicutt conservatively, typically prescribing over-the-counter medication for her headaches.  (Doc. 8-8, pp. 93, 96).[2]  Ms. Hunnicutt's headaches continued to improve after Dr. Long's RFC assessment took place.  (Doc. 8-8, p. 146).  Because Dr. Long's medical records are inconsistent with his RFC assessment, the ALJ did not err in disregarding Dr. Long's RFC assessment.

The ALJ's decision to disregard Dr. Long's RFC assessment is also supported by the other objective medical evidence in the record.  In July 2010, examining psychologist Dr. Jerry Gragg stated that there was "no indication of any cognitive loss secondary to" Ms. Hunnicutt's stroke.  (Doc. 8-8, p. 58).  In November 2010, Dr. Patterson, an examining neurologist, stated that all of Ms. Hunnicutt's symptoms from her stroke had resolved and that she had good

---

[2] Ms. Hunnicutt points to only one instance in which Dr. Long prescribed her prescription headache medication.  (Doc. 13, p. 3).

neurological recovery.  (Doc. 8-8, p. 84).  Later in November 2010, Ms. Hunnicutt had a cerebral angiogram which was essentially normal with no evidence of occlusion or stenosis.  (Doc. 8-8, pp. 90–91).

Ms. Hunnicutt counters that the ALJ failed to consider the fact that she does not have health insurance and has a limited income.  (Doc. 10, p. 8).  However, Ms. Hunnicutt testified at the hearing that her lack of insurance affected her ability to get treatment "[u]ntil Dr. Long."  (Doc. 8-3, p. 53).  Ms. Hunnicutt points to Dr. Long's treatment notes from February 9, 2011, which state that Ms. Hunnicutt "has not been able to get her headache medicine filled" and that "she could not afford to take Plavix."  (Doc. 8-8, p. 97).  However, at Ms. Hunnicutt's next appointment on April 1, 2011, Dr. Long wrote that her "headaches are better" and that Dr. Patterson's examination revealed "no evidence of obstruction or aneurism."  (Doc. 8-8, p. 96).  There is no other evidence in the record that Ms. Hunnicutt was unable to obtain treatment when necessary.

Considering the record as a whole, the Court finds that substantial evidence supports the ALJ's decision to discount the RFC from Ms. Hunnicutt's treating physician.

**B.     Substantial Evidence Supports the ALJ's Credibility Finding.**

Next, Ms. Hunnicutt asserts that the ALJ erred in failing to properly consider her subjective complaints of pain.  (Doc. 10, p. 10).  When a claimant attempts to

prove disability based on her subjective testimony of pain, she must provide "evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain or (2) an objective determination that the medical condition could reasonably be expected to give rise to the alleged pain." *Hamby v. Soc. Sec. Admin., Comm'r*, 480 Fed. Appx. 548, 551 (11th Cir. 2012). If the ALJ decides not to credit the claimant's testimony, then the ALJ must articulate adequate reasons for doing so. *Id.*; *see also Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).

The ALJ provided reasons supported by objective medical evidence for rejecting Ms. Hunnicutt's subjective complaints of pain. First, the ALJ stated that the severity of headache pain Ms. Hunnicutt alleged was not fully consistent with the medical evidence in the record. (Doc. 8-3, p. 29). Ms. Hunnicutt correctly points out that she consistently complained of chronic headaches. (Doc. 8-8, pp. 50, 78, 93–95, 100–102, 139). In fact, of the 16 visits to Dr. Long documented in the record, at least 13 of those reflect that Ms. Hunicutt complained of a headache. (*See* Doc. 8-8, pp. 93–102, 139, 141, 146–49). Nevertheless, there is no evidence in the record that Ms. Hunnicutt's headaches are so severe that they preclude her from work. Ms. Hunnicutt's headaches typically were treated conservatively with over-the-counter medication such as Excedrin Migraine or Tylenol. (Doc. 8-8, pp.

78, 93).   On at least two occasions, Ms. Hunnicutt reported that her headaches were better.  (Doc 8-8, pp. 96, 146).

The ALJ also considered Ms. Hunnicutt's testimony that she had difficulty with walking, balance, concentration, and comprehension.  (Doc. 8-3, p. 29).  The ALJ found that these complaints were inconsistent with the records of Dr. Patterson who concluded that Ms. Hunnicutt's symptoms were resolved and that she had made a good neurological recovery.  (Doc. 8-8, p. 84).  Dr. Patterson's notes reflect that Ms. Hunnicutt "denies any neurological symptoms" since her CVA and "does recognize that her speech and ability to understand have improved in a significant fashion."  (Doc. 8-8, p. 83).  Dr. Allen at Whatley Health Services noted that even though Ms. Hunnicutt complained of comprehension issues, she was able to read the labels of her prescriptions to him.  (Doc. 8-8, p. 45).  In June 2010, Dr. Skelton observed that Ms. Hunnicutt's MRI showed good collateral blood flow to the side of her brain where she previously had an occlusion and stated that "[s]he has essentially no residual effects of her CVA at this time." (Doc. 8-8, p. 52).

Regarding Ms. Hunnicutt's allegation of back pain, the ALJ determined that the medical evidence in the record did not support the level of pain Ms. Hunnicutt described.  (Doc. 8-3, p. 29).  The ALJ noted that the medical record revealed only isolated complaints of back pain and did not contain any objective medical

evidence to support the severity of the pain alleged.  (Doc. 8-8, pp. 101, 116).
Although Ms. Hunnicutt complained to Dr. Long of back pain in September 2010,
when she returned to Dr. Long in October 2010, he did not note complaints of back
pain.  (Doc 8-8, pp. 100–101).

The ALJ articulated various reasons supported by objective medical
evidence for disregarding Ms. Hunnicutt's subjective complaints of pain.
Therefore, the ALJ's credibility finding is supported by substantial evidence.

## C.    The ALJ Properly Considered the Side Effects of Ms. Hunnicutt's Medication.

Finally, Ms. Hunnicutt contends that the ALJ erred in failing to consider the
side effects of her medication.  (Doc. 10, p. 13).  Ms. Hunnicutt testified that her
medications cause drowsiness during the day, which causes her to need to lie
down.  (Doc. 8-3, p. 57).  Ms. Hunnicutt maintains that if the ALJ had properly
considered this side effect along with the testimony of the vocational expert, the
ALJ would have concluded that there are no jobs in the national economy that Ms.
Hunnicutt can perform.  (Doc. 10, p. 14).

The ALJ has a duty to elicit testimony and make findings regarding the
effect of prescribed medications upon the claimant's ability to work.  *Cowart v.
Schweiker*, 622 F.2d 731, 737 (11th Cir. 1981).  This duty "does not relieve the
claimant of the burden of proving she is disabled.  Thus, the claimant must
introduce evidence supporting her claim that her symptoms (including any

medication side effects) make her unable to work." *Walker v. Comm'r of Soc. Sec.*, 404 Fed. Appx. 362, 366 (11th Cir. 2010) (internal citation omitted).  Ms. Hunnicutt testified at the hearing that her medications cause drowsiness and nausea.  (Doc. 8-3, p. 57).  Ms. Hunnicutt also testified that the medication she took for nausea was effective.  (Doc. 8-3, p. 57).  The ALJ noted this testimony in his decision and ultimately determined that Ms. Hunnicutt's testimony as to the intensity, persistence, and limiting effects from her symptoms was not entirely credible.  (Doc. 8-3, pp. 25, 29).

Substantial evidence supports the ALJ's determination.  The only evidence in the record that supports Ms. Hunnicutt's allegations of drowsiness is Dr. Long's RFC assessment, which the ALJ gave little weight because it was inconsistent with Dr. Long's treatment records.  (Doc. 8-3, p. 29; Doc. 8-8, p. 135).  Additionally, Dr. Long's report only states that the medications Ms. Hunnicutt takes can cause drowsiness; the report does not indicate whether the medications actually are causing drowsiness or whether Ms. Hunnicut's alleged drowsiness is so severe that it precludes her from working.  (Doc. 8-8, p. 135).  Dr. Long's treatment records do not reflect that Ms. Hunnicutt complained of significant drowsiness from her medications.  (Doc. 8-8, pp. 34–36, 93–102).  The ALJ's determination also is supported by the notes of other examining physicians who described Ms. Hunnicutt as alert; those physicians did not note problems with drowsiness.  (Doc.

8-8, pp. 51, 84).  Therefore, the ALJ properly considered the side effects of Ms. Hunnicutt's medication.  *See Walker*, 404 Fed. Appx. at 366–67 (holding that ALJ adequately developed the record as to medication side effects where the ALJ asked claimant about side effects, noted this testimony and claimant's complaints to physicians, and determined that claimant's testimony regarding symptoms was not entirely credible).

After reviewing, weighing, and discussing the evidence in the record, the ALJ determined that Ms. Hunnicutt is not disabled under section 1614(a)(3)(A) of the Social Security Act.  (Doc. 8-3, p. 31).  Because substantial evidence supports this conclusion, the Court affirms the ALJ's decision.

## CONCLUSION

For the reasons outlined above, the Court concludes the ALJ's decision is based on substantial evidence and consistent with applicable legal standards. Therefore, the Court **AFFIRMS** the decision of the Commissioner.

**DONE** and **ORDERED** this January 30, 2015.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE